IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jeanne Lollis, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 6:25-1742-RMG |
| v. ) | |
| ) | |
| Frank Bisignano, Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain relief from the final decision of the Commissioner of the Social Security Administration denying her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pretrial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on October 28, 2025, recommending that the Commissioner's decision be affirmed. (Dkt. No. 17). The Plaintiff filed objections to the R & R, and the Defendant filed a reply. (Dkt. Nos. 21, 22). As set forth below, the Court reverses the decision of the Commissioner and remands this matter to the agency with instructions to award benefits.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the R & R to which specific objection has been made, and

may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme of the Social Security Act is a limited one. Section 405(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is limited, "it does not follow, however, that the findings of the administrative agency are mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings." *Vitek*, 438 F.2d at 1157-58.

Under the regulations of the Social Security Administration in effect at the time of Plaintiff's application for disability benefits, the Commissioner was obligated to give deference to the opinions of the claimant's treating physicians. 20 C.F.R. § 404.1527(c).[1] Under the regulation, popularly known as the "Treating Physician Rule," the Commissioner committed to "[g]enerally . . . give more weight to medical opinions from . . . treating sources" based on the

---

[1] This regulation was rescinded for all applications for disability benefits filed after March 27, 2017.

view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations." § 404.1527(c)(2).  Further, the regulation provided that the Commissioner "generally . . . give[s] more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a source who has not examined [the claimant]."  § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight.  Even where such opinions are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of specifically identified factors, including (1) the examining relationship; (2) the nature and extent of the treatment relationship; (3) supportability of the opinions in the medical record; (4) consistency; and (5) whether the treating physician is a specialist. § 404.1527(c)(1)-(5).  Where the decision is not fully favorable and provides greater weight to a source other than the medical opinion of a treating physician, the Commissioner must provide in the decision "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  SSR 96-2P, 1996 WL 374188, at *5.  Further, the Treating Physician Rule mandates that the Commissioner "must always give good reasons" for the weight given to the opinions of a treating physician.
§ 404.1527(c)(2).

## Factual Background

Plaintiff was involved in a severe traffic accident on November 30, 2014, in which she suffered a fractured right pelvis and worsening of a preexisting back condition. Plaintiff has experienced significant physical and mental health challenges since the 2014 automobile accident and has undergone major surgeries on her pelvis and back. An x-ray of Plaintiff's pelvis performed in 2016 revealed chronic healed fracture deformities and 2017 and 2020 MRIs showed multi-level spinal stenosis at L5-S1 and compromise of the exiting nerve roots. (Dkt. Nos. 8-6 at 227; 8-8 at 96). Plaintiff has experienced chronic pain since her 2014 accident and has been managed by pain management specialists almost continuously with narcotic pain medications.

Plaintiff first filed an application for DIB benefits in July 2015 with an asserted onset date of November 30, 2014, the date of her automobile accident. She subsequently filed a SSI claim. Plaintiff's applications for Social Security disability have traveled a long and tortured road, with two separate reversals and remands by the United States District Court. *Lollis v. Saul*, C.A. No. 6:19-1389-JMC (March 3, 2020); *Lollis v. Kijakazi*, C.A. No. 6:22-2301-RMG, Dkt. No. 15 (January 10, 2023). The 2023 reversal and remand instructed the Commissioner to conduct a new hearing and to further evaluate the medical opinions, the RFC and the Plaintiff's "ability to make an adjustment to work." *Lollis v. Kijakazi* at 1.

This Court's instruction in the 2023 reversal and remand order to address Plaintiff's ability to adjust to work was in reference to the written opinions of three treating physicians that, although Plaintiff was capable of performing sedentary work, her severe orthopaedic impairments and associated chronic pain would result in her being off task more than 15% of the work day. (Dkt. Nos. 8-6 at 225, 227; 8-8 at 96). At Plaintiff's third administrative hearing, conducted on

July 13, 2023, the ALJ specifically raised the opinions of the three treating physicians and asked the Vocational Expert whether Plaintiff being off task 15% of the workday would eliminate all jobs in the national economy. The Vocational Expert responded, "It would, Your Honor. There would be no jobs." (Dkt. No. 9 at 83, 133).

The ALJ's decision, issued on October 16, 2023, found that Plaintiff had the following severe impairments: pelvis fracture status post open reduction internal fixation, lumbar spine degenerative disc disease, SI joint osteoarthritis, bronchitis, post-traumatic brain injury, mild neurocognitive disorder, post concussive syndrome, anxiety disorder, personality disorder, bipolar disorder, and PTSD. (Dkt. No. 9 at 38-39). Despite these multiple, severe physical and mental impairments, the ALJ found that Plaintiff retained the RFC of less than the full scope of sedentary work, the lowest level of function a claimant may have and not be deemed disabled under the Social Security Act. (*Id*. at 42). The ALJ further gave "limited weight" to the opinions of Plaintiff's three treating physicians regarding the need for her to be off task at least 15% of the time and found Plaintiff was not disabled under the Social Security Act. (*Id*. at 57-58, 62-63). Plaintiff thereafter timely filed an appeal to this Court.

## Discussion

It is important to note at the outset the substantial areas of agreement between the parties regarding Plaintiff's multiple severe impairments. All agree that Plaintiff has suffered and continues to suffer from significant orthopaedic and mental health impairments, primarily arising out of her November 2014 automobile accident. The parties further agree that Plaintiff is capable of performing less than the full scope of sedentary work. Where they part ways is on the issue of whether Plaintiff's severe impairments would require her to be off task 15% or more of the work

day.

Dr. Elywn James, a family physician who has treated Plaintiff over the last decade, offered his opinion that Plaintiff would be off task more than 15% of the work day because her "fractured right pelvis never fully healed" and causes "severe pelvic pain." He referenced a 2016 x-ray of the pelvis to support his opinion. Dr. James further noted Plaintiff's chronic back pain and referenced a 2015 MRI that showed significant spinal abnormalities. He opined that Plaintiff "would be off task more than 15% of the working day due to a combination of pelvic pain, back pain, anxiety and depression." (Dkt. No. 8-6 at 225).

Dr. Lisa Forgione, a treating pain management specialist, referenced Plaintiff's 2016 pelvic x-ray and 2017 and 2020 MRIs to support her opinions regarding the severity of Plaintiff's pelvic and back impairments. She also documented that Plaintiff's pain "worsened with walking, change of weather, and standing for long periods" and was decreased with "laying down and by medications." Dr. Forgione stated that Plaintiff could perform sedentary work but would be off task more than 15% of the work day "due to the combination of her chronic back and pelvic pain." (*Id.* at 227).

Dr. Phillip Esce, a treating orthopaedic surgeon, described the significant spinal surgery he found necessary to perform because of Plaintiff's "severe spinal stenosis at L5-S1 along with impingement of the exiting L5 nerve roots." Dr. Esce also opined that Plaintiff was capable of performing sedentary work but would be "off task more than 15% of the working day due to her chronic back pain impacting her ability to concentrate." He noted that even following her spinal fusion, Plaintiff "will likely continue to have these functional limitations and will require continued pain management as well as physical therapy." (Dkt. No. 8-8 at 96).

The ALJ rejected the opinions of all three treating physicians that Plaintiff would be off task more than 15% of the work day based upon the fact that their medical records contained statements such as "not in acute distress," "no obvious discomfort," "no . . . oversedation," and "pain at Level 5 with medications." (Dkt. No. 9 at 57-58). The ALJ found that the treating doctors' opinions were "inconsistent with the longitudinal record, including their specific treatment notes." (*Id*. at 57). Context is important, however, since these entries were made in the medical record of patient who was having her chronic pain managed with powerful narcotic medications, including Morphine and Oxycodone, and who spent most of her day inactive at home and often in bed. (Dkt. No. 8-3 at 455; Dkt. No. 8-5 at 497; Dkt. No. 8-6 at 6, 8, 18; Dkt. No. 9 at 103).[2]

The ALJ's conclusion fundamentally misapprehends the opinions of the treating doctors. They opine that the Plaintiff's underlying orthopaedic and mental health impairments would be exacerbated by the requirements of even sedentary work and would require her to be off task 15% of the work day. For instance, Dr. Forgione stated that Plaintiff's pain was worsened by walking, standing and a change in weather and was deceased by laying down and by taking medications. (Dkt. No. 8-6 at 227). Sedentary work requires the employee to stand or walk up to two hours per

---

[2] The record also contains a questionnaire completed by Plaintiff's mother, which provides detailed information about the profound functional limitations of her daughter based upon daily time spent with her daughter. These include statements that she must stop and rest after walking 10 minutes, must then take a break for another 30 minutes before resuming walking, and "stay[s] in bed unless she has a doctor appt." (Dkt. No. 8-5 at 422, 423, 427). The ALJ also rejected the mother's information, dismissing her factual information as a "lay opinion based on casual observation . . . and may be influenced by loyalties of personal relationship." (Dkt. No. 9 at 61). In sum, the ALJ rejected the evidence offered by all three treating doctors, the patient's mother, and the Plaintiff herself, all which were remarkably consistent and were the only persons in the record with first hand knowledge of Plaintiff's condition.

day and to sit six hours per day. SSR 96-9P, 1996 WL 374185, at *3. Dozens of entries in Plaintiff's medical records document that these types of activities required with sedentary work exacerbate Plaintiff's chronic pelvic and back pain. Some examples include Dkt. No. 8-4 at 364 (pain aggravated by walking, bending over); Dkt. 8-4 at 369 (pain aggravated by "extension, flexion, carrying, lifting, standing, walking"); Dkt. No. 8-5 at 497 ("Pain is worsened by walking, sitting for long periods, standing for long periods, bending forward, backward, lifting objects, working, activity. Pain is decreased by rest, change of positions, medication"); Dkt. No. 8-6 at 5-6 ("pain is worsened with activity"); Dkt. No. 8-6 at 227 ("pain [is] worsened with walking, change in weather").

The ALJ references the opinions of "State agency medical consultants" in support of his conclusions, but none of these consultants have examined or treated Plaintiff or, for that matter, ever laid eyes on her. (Dkt. No. 9 at 59-60). Further, these State Agency consultants never addressed in their highly truncated reports the issue of whether or not Plaintiff would be off task more than 15% of the time. Under the Treating Physician Rule, the opinions of non-examining sources must be weighed by the same standards of treating physicians, including consideration of such factors as the examining relationship, the treatment relationship, supportability of opinions in the medical record, consistency and whether the non-examining source is a specialist. 20 C.F.R. § 404.1527(c). Measured by these standards, reliance on the opinions of the non-examining chart reviewers rather than the well informed opinions of the treating physicians constitutes an obvious violation of the Treating Physician Rule.

In the final analysis, it is clear that the ALJ's finding that the opinions of the three treating physicians are "inconsistent with the longitudinal record" is not supported by substantial

evidence. Drs. James, Forgione, and Esce have offered consistent, clear opinions that Plaintiff's well documented pain associated with her severe orthopaedic impairments would be exacerbated by activities associated with sedentary work and would require her to be off task more than 15% of the work day. Their findings and opinions are supported by information provided by the Plaintiff and her mother. There is no record evidence contesting the opinions of the treating physicians on the issue of whether Plaintiff would be off task 15% or more of the time. According to the Vocational Expert, no jobs would be available to Plaintiff in the national economy with her RFC if she was off task more than 15% of the work day. (Dkt. No. 9 at 133). Since the Commissioner must carry the burden at Step Five of the Sequential Process to demonstrate that there are jobs in the national economy the claimant can perform with her RFC, the opinion of the Vocational Expert establishes that Plaintiff is disabled as a matter of law under the Social Security Act. *Monroe v. Colvin*, 826 F.3d 176, 180 (4th Cir. 2016).

The only issue remaining is whether the Court should send this matter back to the agency for a third time after reversal for further administrative processing or remand the case with an order to award benefits. This Court's general practice is to remand to the agency for further proceedings but it is well settled that the Court has the authority to award benefits. 42 U.S.C. § 405(g). An award of benefits by a district court is appropriate where, as here, the record is fully developed and it is clear the Commissioner would be required to award benefits on remand. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *Holohan v. Massanairi*, 246 F.3d 1195, 1210 (9th Cir. 2001); *Brown v. Kijakazi*, No. 2:31-353-RMG, 2021 WL 5276031, at *2 (D.S.C. Nov. 12, 2021). This is particularly true where there has been a significant lapse of time in the administrative processing of the claim. *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984).

This application for benefits was filed on July 16, 2015, more than *ten* years ago. The time to award benefits has now arrived.

## Conclusion

Based on the foregoing, the Court **REVERSES** the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and **REMANDS** the matter to the agency **WITH INSTRUCTIONS TO AWARD BENEFITS** from Plaintiff's onset date of November 30, 2014.

**AND IT IS SO ORDERED**.

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

December 9, 2025
Charleston, South Carolina